UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| LUCIANO CAMBEROS-VILLAPUDA, <br><br> Movant, <br><br> vs. <br><br> UNITED STATES OF AMERICA, <br><br> Respondent. | 4:17-CV-04161-KES <br><br><br> REPORT & RECOMMENDATION |

**INTRODUCTION**

Movant, Luciano Camberos-Villapuda, has filed a *pro se* motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.  See Docket No. 1.[1]  Now pending is a motion by respondent the United States of America ("government") to dismiss all of Mr. Camberos-Villapuda's claims.  See Docket No. 8.  Mr. Camberos-Villapuda resists the motion.  See Docket No. 14. This matter has been referred to this magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) & (B) and the October 16, 2014, standing order of the Honorable Karen E. Schreier, United States District Judge.  The following is this court's recommended disposition of the government's motion.

---

[1] Within this opinion the court cites to documents in Mr. Camberos-Villapuda's civil habeas case by simply citing the court's docket number for that document. Documents filed in his criminal case will be cited "CR" followed by the docket number from the criminal case.

## FACTS

**A.    Background**

Mr. Camberos-Villapuda was charged in an indictment with conspiracy to distribute a controlled substance.  See United States v. Camberos-Villapuda, CR No. 13-40104 (hereinafter "CR"), Docket No. 1.  He made his initial appearance on December 2, 2013, at which time Patrick Schroeder was appointed as counsel for Mr. Camberos-Villapuda.  See CR Docket No. 7.  Upon receiving discovery, Mr. Schroeder discovered a conflict of interest and moved to withdraw from the case.  CR Docket 15.  Attorney Michael Butler was appointed as substitute counsel on January 8, 2014.  CR Docket 16.

Mr. Butler filed a motion to suppress certain physical evidence and statements on July 23, 2014.  CR Docket 23.  An evidentiary hearing was held on August 5, 2014, and a report and recommendation to partially grant the motion was submitted to the district court.  CR Docket 29-30, 33 & 40.   On September 11, 2014, the district court adopted the report and recommendation, granted the motion in part, and denied the balance of the motion.  CR Docket 50.

On August 14, 2014, attorney Michael Butler filed a motion to withdraw based on a conflict of interest.  CR Docket 35.  The motion was granted and attorney Cesar Juarez was appointed as substitute counsel on August 19, 2014.  CR Docket 48.

A jury trial was held March 23-26, 2015.  CR Docket 72-81.  The jury found Mr. Camberos-Villapuda guilty of conspiracy to distribute 500 grams or

more of a mixture or substance containing a detectable amount of methamphetamine.  CR Docket 80.

A presentence investigation report was prepared and defense counsel filed objections on behalf of Mr. Camberos-Villapuda.  CR Docket 86, 95-97 & 109-110.  A sentencing memorandum was also submitted to the court. CR Docket 98.  The government filed its notice of intent to seek increased punishment based upon Mr. Camberos-Villapuda's prior convictions for felony drug offenses.  CR Docket 58, 104.  Sentencing occurred on October 5, 2015. Mr. Camberos-Villapuda was sentenced to life imprisonment.  CR Docket 111-114.

Mr. Camberos-Villapuda filed a direct appeal.  CR Docket 114.  On appeal, Mr. Camberos-Villapuda raised two issues:  (1) whether the district court erred in denying his motion to suppress physical evidence from the Denver, Colorado, search; and (2) whether the imposition of a life sentence violated the Eighth Amendment's prohibition on cruel and unusual punishment.  United States v. Camberos-Villapuda, 832 F.3d 948, 949 (8th Cir. 2016).    The Eighth Circuit affirmed his conviction on August 12, 2016. Id.

**B.    Mr. Camberos-Villapuda's § 2255 Motion**

Mr. Camberos-Villapuda filed his current motion to vacate, correct or set aside his sentence on November 20, 2017.  See Docket No. 1.  In his motion Mr. Camberos-Villapuda alleges four grounds for relief:

1.  His trial counsel was cumulatively ineffective;

2.  The district court erred in denying his motion to suppress physical evidence as a result of illegal seizure of person and property.

3

3. The district court committed plain error when it relied solely on the facts recited in the presentence investigation report.

4. The district court imposed a procedurally and substantively unreasonable sentence in violation of 18 U.S.C. § 3553.

The government now moves to dismiss each of Mr. Camberos-Villapuda's claims for relief. See Docket Nos. 8 & 9. Mr. Camberos-Villapuda resists the motion. See Docket No. 14.

## DISCUSSION

### A.    Scope and Procedure Applicable to a § 2255 Motion

Section 2255 of Title 28 of the United States Code provides, in relevant part, as follows:

> (a)  A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authority authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a).

Section 2255 of Title 28 of the United States Code was enacted to supersede habeas corpus practice for federal prisoners. Davis v. United States, 417 U.S. 333, 343-44 (1974). Prior to the enactment of § 2255, habeas claims had to be brought in the district where the prisoner was confined, resulting in overburdening those districts where federal correctional institutions were located and presenting logistical issues because the record in the underlying criminal case was often in a distant location. United States v. Hayman, 342

U.S. 205, 212-16 (1952). The enactment of § 2255 resolved these issues by requiring that the motion be filed in the sentencing court. Id.

The scope of a § 2255 motion is seemingly broader than the scope of a habeas petition, the latter of which is typically limited to allegations of a constitutional dimension. Section 2255 allows a federal prisoner to "vacate, set aside or correct" a federal sentence on the ground that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." See 28 U.S.C. § 2255. Where the allegation for relief is *not* based on a violation of a Constitutional right or an assertion that the court was without jurisdiction, the Supreme Court has read a "fundamentality" requirement into § 2255--relief is available for only those errors which constitute a "fundamental defect which inherently results in a complete miscarriage of justice" or "an omission inconsistent with the rudimentary demands of fair procedure." Hill v. United States, 368 U.S. 424, 428 (1962); see Peguero v. United States, 526 U.S. 23, 27-30 (1999).

Generally, petitioners are precluded from asserting claims pursuant to § 2255 that they failed to raise on direct appeal. United States v. Frady, 456 U.S. 152, 167-68 (1982); McNeal v. United States, 249 F.3d 747, 749 (8th Cir. 2001). When a § 2255 petitioner asserts a claim that is procedurally defaulted because it was not raised on direct appeal, the claim can only proceed after the petitioner has shown either: (1) actual innocence or (2) that the procedural default should be excused because there was both cause for the default and

actual prejudice to the petitioner.  <u>Bousley v. United States</u>, 523 U.S. 614, 621-22 (1998); <u>McNeal</u>, 249 F.3d at 749.  Therefore, barring a claim of actual innocence, a petitioner must show both cause for why he failed to raise an issue on direct appeal as well as actual prejudice caused by the alleged errors.

Appellate courts generally refuse to review claims of ineffective assistance of counsel on direct appeal; such claims are, therefore, properly addressed for the first time in a § 2255 motion such as the one here.  <u>See</u> <u>United States v. Campbell</u>, 764 F.3d 880, 892-93 (8th Cir. 2014) (ineffective assistance of counsel claims are not generally cognizable on direct appeal and will be heard only to prevent a miscarriage of justice or in cases where the district court has developed a record on the issue).  Therefore, no procedural default analysis is required before examining a claim of constitutionally-deficient counsel.

In addition, when a defendant *has* raised an issue on appeal, that issue cannot be relitigated in a § 2255 proceeding.  "With rare exceptions, § 2255 may not be used to relitigate matters decided on direct appeal." <u>Sun Bear v. United States</u>, 644 F.3d 700, 702 (8th Cir. 2011) (*en banc*) (citing <u>Davis v. United States</u>, 417 U.S. 333, 346-47 (1974)); <u>United States v. Wiley</u>, 245 F.3d 750, 752 (8th Cir. 2001); <u>United States v. McGee</u>, 201 F.3d 1022, 1023 (8th Cir. 2000) (*per curiam*).  Issues may be relitigated in a § 2255 motion if the error constitutes "a fundamental defect which inherently results in a complete miscarriage of justice." <u>Davis</u>, 417 U.S. at 346-47; <u>Sun Bear</u>, 644 F.3d at 704.  Or where the petitioner presents convincing new evidence of actual innocence. <u>Wiley</u>, 245 F.3d at 752 (citing <u>Weeks v. Bowersox</u>, 119 F.3d 1342, 1350-51 (8th Cir. 1997) (*en banc*)).

6

Finally, motions pursuant to § 2255 are also subject to a one-year statute of limitations pursuant to § 2255(f).  The Eighth Circuit issued its mandate in Mr. Camberos-Villapuda's case on September 19, 2016.  CR Docket No. 128.  Mr. Camberos-Villapuda had 90 days thereafter to seek review before the United States Supreme Court. Clay v. United States, 537 U.S. 522, 525 (2003).  His statute of limitations on his § 2255 motion began to run only after this 90-day period expired.  Clay, 537 U.S. at 527 (for the purpose of starting § 2255's one-year limitation period, "[f]inality attaches when [the Supreme] Court affirms a conviction on the merits on direct review or denies a petition for a writ of certiorari, or when the time for filing a certiorari petition expires.").  Mr. Camberos-Villapuda filed his instant § 2255 motion on November 20, 2017, approximately 30 days before the expiration of the limitations period, so the motion is timely.

**B.    Claims of Ineffective Assistance of Counsel**

  **1.    The Strickland Standard**

Mr. Camberos-Villapuda alleges his defense counsel was cumulatively deficient in representing him.  The Sixth Amendment of the Constitution of the United States affords a criminal defendant with the right to assistance of counsel.  The Supreme Court "has recognized that 'the right to counsel is the right to effective assistance of counsel.' " Strickland v. Washington, 466 U.S. 668, 698 (1984) (citing McMann v. Richardson, 397 U.S. 759, 771, n.14 (1970)).  Strickland is the benchmark case for determining if counsel's assistance was so defective as to violate a criminal defendant's Sixth Amendment rights and require reversal of a conviction.  Id. at 687.  "When a

convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." Id. at 687-688. The defendant must also show that counsel's unreasonable errors or deficiencies prejudiced the defense and affected the judgment. Id. at 691. The defendant must show "there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." Id. at 695. In sum, a defendant must satisfy the following two-prong test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

Id. at 687.

"There is a presumption that any challenged action was sound trial strategy and that counsel rendered adequate assistance and made all significant decisions in the exercise of professional judgment." Hall v. Luebbers, 296 F.3d 685, 692 (8th Cir. 2002). It is the petitioner's burden to overcome this presumption, and a "petitioner cannot build a showing of prejudice on a series of errors, none of which would by itself meet the prejudice test." Id. Judicial scrutiny of attorney performance is highly deferential, with a strong presumption that counsel's conduct falls within the range of reasonable professional conduct. Strickland, 466 U.S. at 698.

### 2.    Application of the Standard to Mr. Camberos-Villapuda's Claim

Mr. Camberos-Villapuda asserts two deficiencies of trial counsel:
(1) counsel failed to preserve a record of jury selection strikes and for-cause challenges; and (2) "Camberos has demonstrated he possessed a legitimate expectation of privacy in the location searched, he never abandoned the interest of his home or expedition and/or the circumstances." The court addresses these two allegations in turn.

### a.    Failure to Preserve Record as to Jury Selection

The government moves to dismiss this claim as Mr. Camberos-Villapuda never explains what evidence relative to jury selection counsel should have preserved, how that failure to preserve was deficient representation, what the significance of any such evidence might have been, and how Mr. Camberos-Villapuda was prejudiced by counsel's conduct. In his response in opposition to the government's motion to dismiss, Mr. Camberos-Villapuda never addresses this argument and never supplies any additional details. The court concludes he has abandoned this argument as a grounds for obtaining § 2255 relief.

Even if the claim is not abandoned, Mr. Camberos-Villapuda cannot succeed on the claim. Under Strickland, it is his burden to show both deficient representation by counsel and prejudice resulting from that deficient representation. Strickland, 466 U.S. at 687. He has not carried his burden to articulate facts in support of either prong. Accordingly, this court recommends this claim for relief be denied and the government's motion to dismiss this claim be granted.

9

### b.    Failure to Effectively Litigate Suppression

In his petition, Mr. Camberos-Villapuda asserted trial counsel was ineffective in regards to the motion to suppress because "Camberos demonstrated that he possessed a legitimate expectation of privacy in the location searched, he never abandoned the interest of his home or expedition and/or the circumstances."  See Docket No. 1 at p. 4.  In Mr. Camberos-Villapuda's response in opposition to the government's motion to dismiss, he further elaborates on his claim.  See Docket No. 14.  He asserts counsel should have challenged whether a legitimate law enforcement objective existed when the police began their investigation; counsel should have challenged the anonymous tip as a basis for the investigation; counsel should have challenged the basis for the warrantless search due to exigent circumstances (specifically, counsel should have argued there was no probable cause from the anonymous tip); counsel failed to challenge Detective Baughman's statement that defendant acted like he was looking for someone; counsel failed to establish that police never asked defendant if he lived at the Alameda Avenue house; and counsel should have established the name of the person who owned the Ford Expedition.

The government's motion to dismiss is based on the vague and conclusory nature of Mr. Camberos-Villapuda's original articulation of this claim in his petition.  Even though Mr. Camberos-Villapuda explained the grounds for this claim further in his response in opposition to the government's motion to dismiss, and even though it has been more than a month since Mr. Camberos-Villapuda filed his response in opposition, the government has

not addressed the merits of Mr. Camberos-Villapuda's claim. In order to understand Mr. Camberos-Villapuda's claim in context, the court sets forth a more detailed account of the suppression proceedings.

### i.   The District Court's Decision

Trial counsel moved to suppress any physical evidence seized from a home on Alameda Avenue in Denver, Colorado; from a 1997 maroon Ford Expedition with Nebraska license plates; and any statements made by Mr. Camberos-Villapuda while seized by Denver law enforcement. See CR Docket No. 23. Counsel alleged the searches and seizures resulting in the discovery of said evidence violated the Fourth and Fifth Amendments to the United States Constitution. Id.

An evidentiary hearing was held at which only one witness testified— Denver Police Department Detective Matthew Baughman. See CR Docket No. 40 at p. 1. The detective testified that he received an anonymous tip on May 30, 2013, that a shipment of narcotics would be arriving at a home near the intersection of Holly and Alameda in a vehicle with out-of-state license plates. Id. at p. 2. The detective and his partner conducted surveillance in the area the night of May 30 carrying over to the early morning hours of May 31. Id. At 3 a.m., the detective walked around the neighborhood, walking down an alley. As he approached the house on Alameda involved in this matter, "the subject house," he observed a garage facing the alley, a fence with an open gate, and a portion of the fence which had been removed. Id. The detective observed a vehicle parked on the east side of the subject house which had not been there earlier when the detective had previously walked down the alley. Id.

11

The detective observed the vehicle to be an SUV with out-of-state (Nebraska) license plates.  Id.  Mr. Camberos-Villapuda was under the vehicle shining a flashlight on it and apparently working on it.  Id.  The detective found it suspicious that someone would be working on a vehicle in the dark at 4 a.m. in a residential neighborhood.  Id.  Looking through gaps in the fence, the detective heard grinding noises and could see defendant grinding on the frame underneath the vehicle.  Id.  Mr. Camberos-Villapuda was not wearing work (mechanic's) clothes.  Id.  Eventually, defendant emerged from beneath the vehicle and looked around as if watching for someone to arrive.  Id.  Then defendant entered the subject house through the back door.  Id.

The detective contacted his partner.  Id.  A few moments later, defendant came back out of the house and went to work under the vehicle again.  Id. at p. 3. The detective and his partner watched defendant from outside the fence for about 15 minutes.  Id.  The vehicle did not appear to be operable.  Id.  The detective suspected defendant was working on a "vehicle hide."  Id.  The detective asked for assistance and 3 more police officers arrived.  Id.

Once the 3 new officers arrived, the officers entered the yard of the subject house and made contact with Mr. Camberos-Villapuda.  Id.  At first, defendant denied he was working on the vehicle.  Id.  He then stated he was working on the wheel bearings, but the wheel bearings were not located on the vehicle in the area defendant had been working.  Id.  Furthermore, Mr. Camberos-Villapuda appeared very nervous.  Id.  Inside the yard, the detective observed Mr. Camberos-Villapuda had been using a hacksaw, screwdriver, grinder blade, pliers, hammer, and body putty, all tools the detective knew are

used to create a "vehicle hide." Id.  The detective looked under the SUV and saw a rectangular tube running the length of the vehicle with a hole cut in part of the frame in order to hide items.  Id.  Drug cartel operations ordinarily use "vehicle hides" to transport guns, drugs, and large amounts of currency across the country.  Id.  The detective told his partner about the hidden tube.  Id.

Mr. Camberos-Villapuda gave inconsistent accounts of who owned the vehicle.  Id.  First, he disclaimed ownership of it.  Id.  The officers then ran a computer inquiry and discovered the name of the registered owner.  Id.  The officers asked defendant if he knew how to contact the owner.  Id. at p. 4.  The officers cleared the house then secured the house and vehicle while a search warrant was applied for.  Id.  Police handcuffed Mr. Camberos-Villapuda and advised him of his Miranda rights.  Id.  Defendant then stated he owned the vehicle, but he'd registered it in someone else's name because he did not have a driver's license.  Id.

As to the house, Mr. Camberos-Villapuda first denied having entered the house.  Id.  Then he told officers he had entered but there was no one home. Id.  Finally, he admitted there were other people in the house and that he had been staying there.  Id.

The officers suspected the house was being used by a drug cartel.  Id.  As it was beginning to become light out, they worried the officers would be in danger when the people in the house awoke and discovered several officers in the yard.  Id.  For these reasons, they decided to secure the house while a search warrant was sought.  Id.

13

The officers knocked on the door; when no one answered, they entered. Id. They found a man in one room and a woman in a different room and drugs and drug paraphernalia in plain view. Id. A search warrant was obtained. Id. When the search warrant was executed, a large amount of currency and methamphetamine were discovered. Id. When the vehicle was searched, two hidden compartments were found with a gun and money in them. Id. at p. 5. The area where Mr. Camberos-Villapuda was working had fresh putty. Id. Another vehicle was discovered in the garage which was in the process of having hidden compartments installed. Id.

The district court suppressed Mr. Camberos-Villapuda's statements made between the discovery of the hidden compartment by Detective Baughman and the time he was advised of his Miranda warnings, but did not suppress any of the physical evidence. See CR Docket No. 40 at p. 14; Docket No. 50. The court found the area where Mr. Camberos-Villapuda was working on the SUV was part of the curtilage of the subject home, but that the area from where the detective observed him working initially was outside the curtilage. See Docket No. 40 at pp. 7-8. Thus, the officer's initial observations did not violate the Fourth Amendment. Id.

Based on the anonymous tip and the detective's own observations corroborating the tip (seeing defendant apparently working on installing a hidden compartment in an SUV with out of state plates at the approximate location identified by the tipster), the court held the officer had a legitimate law enforcement objective and did not violate the Fourth Amendment when he entered the curtilage to make contact with Mr. Camberos-Villapuda. Id. at

14

pp. 8-9 (citing <u>United States v. Weston</u>, 443 F.3d 661, 667 (8th Cir. 2006);

<u>Alvarez v. Montgomery County</u>, 147 F.3d 354, 359 (4th Cir. 1998)).

The court further held that the entry into the home in order to secure it

while a search warrant was obtained was justified by the exigent circumstances

exception to the warrant requirement.  <u>Id.</u> at pp. 10-11.  The court justified this

entry based on the detective's credible testimony that (1) there was a distinct

chance that evidence would be destroyed and (2) the officers' lives might be in

danger if daybreak revealed the officers' presence to persons inside the home.

<u>Id.</u>

Finally, as an alternative holding, the court denied Mr. Camberos-

Villapuda's motion to suppress because he had no legitimate expectation of

privacy.  <u>Id.</u> at pp. 11-12.  In support of this holding, the court relied on

Mr. Camberos-Villapuda's statements to police that he did not own the SUV,

had not been in the house, there was no one in the house, and he did not know

who lived there.  <u>Id.</u> at p. 12.

### ii.    The Eighth Circuit Opinion

Mr. Camberos-Villapuda appealed the district court's denial of his

suppression motion.  <u>Camberos-Villapuda</u>, 832 F.3d at 951.  The Eighth

Circuit noted that ordinarily, as an overnight guest at the subject house and as

the owner and possessor of the SUV, Mr. Camberos-Villapuda would have had

a legitimate expectation of privacy sufficient to confer Fourth Amendment

rights.  <u>Id.</u> at 951-52.  However, a person may voluntarily abandon an interest

in property.  <u>Id.</u>  The determination whether abandonment has occurred

requires evaluation of the totality of the circumstances.  <u>Id.</u> at 952.  The court

evaluates the totality of the circumstances based on the objective facts available to the investigating officers at the time the challenged search took place.  Id.  The test does not depend on the subjective knowledge or intent of the defendant.  Id.

Looking at the facts available to the officers on the night of May 31, 2013, the court held they were justified in determining Mr. Camberos-Villapuda had abandoned his interest in the house and SUV.  Id.  Not only did he verbally repudiate any ownership of either property, but when officers ran an inquiry regarding ownership of the SUV, it confirmed that Mr. Camberos-Villapuda was *not* the registered owner.  Id.

The court also rejected defense counsel's argument that the officers were not warranted in entering upon the curtilage and that illegal entry "tainted" all the other searches which occurred.  Id.  The court declined to address whether the entry onto the curtilage was valid under the Fourth Amendment, but noted Mr. Camberos-Villapuda's voluntary abandonment of the property came *after* the allegedly illegal entry.  Id.  The court held this "voluntary act of free will . . . 'independently legitimated' the subsequent searches."  Id.

### iii.    Analysis of Mr. Camberos-Villapuda's Allegations

The court discerns 6 separate allegations of ineffective representation by counsel in connection with the suppression hearing.  Allegations 1-4 have to do with whether a legitimate law enforcement objective existed, whether the anonymous tip was sufficient to give rise to the investigation, whether the search was supported due to exigent circumstances and whether defendant's own behavior in looking around as if waiting for someone was suspicious.  See

Docket No. 14.  None of these allegations are relevant.  Each of these elements discussed by the district court in its opinion were set aside by the Eighth Circuit in favor of the alternative holding—i.e. that Mr. Camberos-Villapuda had no legitimate expectation of privacy in the home or the SUV.

In order to have standing, a defendant must show that, under the totality of circumstances, he or she possessed a legitimate expectation of privacy in the area searched.  Rawlings v. Kentucky, 448 U.S. 98, 104 (1980).  "[T]he person challenging the search has the burden of showing both a subjective expectation of privacy and that the expectation is objectively reasonable; that is, one that society is willing to accept."  United States v. Mendoza, 281 F.3d 712, 715 (8th Cir. 2002) (quoting United States v. McCaster, 193 F.3d 930, 933 (8th Cir. 1999)).  If a defendant cannot carry his burden to show standing, he simply does not have the right to contest a search.  The district court, in its alternative holding, and the Eighth Circuit concluded just that—Mr. Camberos-Villapuda did not have the right to challenge the searches of the SUV or the subject home because he did not have a legitimate expectation of privacy.  Thus, all the other issues concerning whether the law enforcement objective was legitimate, whether the anonymous tip bore sufficient indicia of reliability, and whether the officers erred by entering the curtilage without a warrant, are rendered moot.  Even if errors were made, the Eighth Circuit held Mr. Camberos-Villapuda had no right to complain about the errors.  Thus, as to these allegations of counsel's errors, the court finds Mr. Camberos-Villapuda has not established Strickland prejudice.

Mr. Camberos-Villapuda's fifth allegation is that counsel was ineffective for failing to establish that police *never asked him* in the early morning hours of May 31, 2013, whether he lived at the subject home. This is relevant to the issue of legitimate expectation of privacy and the totality of the circumstances test.

At the suppression hearing, defense counsel asked the detective if Mr. Camberos-Villapuda had told police he was staying at the home. See CR Docket No. 33, Suppression Hearing transcript ("SH") at p. 38, lines 6-7.[2] The detective agreed the defendant made this statement. Id. at line 8. Counsel also established that Mr. Camberos-Villapuda told police that he had paid for the SUV, but titled it in someone else's name. Id. at lines 9-13, & 16-23; page 39, lines 17-19. The detective agreed Mr. Camberos-Villapuda made this statement. SH at p. 39, lines 20-24. In closing remarks at the conclusion of the evidentiary hearing on the suppression motion, defense counsel asserted "It's unrebutted that he was staying at the home. That standing requirement was met. It's unrebutted. They entered onto private property of the home where he was staying." Id. at p. 59, line 25; p. 60, lines 1-3.

Thus, defense counsel did not ask the detective if Mr. Camberos-Villapuda said he *lived* at the subject house, but he did establish that defendant told police he was *staying* at the subject house. For purposes of the

---

[2] The transcript was filed in the court's electronic docket, CM/ECF. That electronic system assigned page numbers which are, unfortunately, not the same as the actual page numbers of the transcript itself. The court in this opinion cites to the actual page numbers of the transcript itself rather than to the CM/ECF-assigned page numbers.

Fourth Amendment, either living or staying at a house overnight gives rise to standing to challenge a search.  See Carter v. Minnesota, 525 U.S. 83, 90 (1998).  Therefore, the difference between the two questions is immaterial. Mr. Camberos-Villapuda cannot establish Strickland prejudice for this alleged deficiency because counsel did the necessary questioning to elicit the best evidence in support of Fourth Amendment standing.  That the courts viewed the evidence differently cannot be chalked up to deficient performance by counsel.

The sixth and final allegation of ineffective representation Mr. Camberos-Villapuda makes is that counsel should have established the name of the person who owned the Ford Expedition.  As this may have some tangential bearing on the issue of Fourth Amendment standing, the court addresses it.

It is true counsel did not establish the *name* of the person to whom the SUV was registered.  But the name of that person was established.

 The court asked the detective to clarify the timeline and the owner with regard to the SUV.  SH at pp. 41-43.  The detective testified initially, defendant was asked if the SUV was his and he said it was not.  Id. at p. 42, lines 10-12. Furthermore, defendant was asked if he knew who the owner was and he said he did not.  Id. at lines 12-13.  Police only learned the name of the SUV's owner after running an inquiry in the Department of Motor Vehicles database.  Id. at lines 13-16.  Police then asked Mr. Camberos-Villapuda whether he knew the owner or if he knew how to contact the owner.  Id. at lines 17-19. Mr. Camberos-Villapuda said he did not know either.  Id. at lines 19-22.  The registered owner was someone named "Callie."  Id. at lines 21-22.

Mr. Camberos-Villapuda only later—some two hours later—told police that he had paid for the SUV but registered it in someone else's name because he did not have a driver's license.  Id. at lines 23-25; p. 43, lines 2-17.

In closing remarks, defense counsel argued the name on the title of a vehicle is not the sole test as to expectation of privacy.  Id. at p. 60, lines 4-25.  Instead, counsel argued the court should rely on Mr. Camberos-Villapuda's statement to police later on that he had been driving the vehicle.  Id.  If one is traveling in a vehicle, one has a legitimate expectation of privacy in it counsel argued.  Id.

Here, assuming the name of the registered owner of the SUV is somehow relevant, the court finds no Strickland prejudice because the name was established in the record.  The court accordingly recommends this claim for relief be denied.

### c.     Cumulative Errors of Counsel

Finally, the court addresses Mr. Camberos-Villapuda's allegation that trial counsel was "cumulatively ineffective."  See Docket No. 1 at p. 4.  The court interprets Mr. Camberos-Villapuda to be arguing that all of the alleged errors he attributes to counsel created Strickland prejudice.  The Eighth Circuit does not recognize as grounds for habeas relief the cumulation of all of a petitioner's claims.  Henderson v. Norris, 118 F.3d 1283, 1288 (8th Cir. 1997); Scott v. Jones, 915 F.2d 1188, 1191 (8th Cir. 1990).  Accordingly, the court recommends this claim for § 2255 relief be denied.

20

**C.      Claims Which Were Previously Raised or Should Have Been Raised on Direct Appeal**

As indicated above, if a claim can be raised on direct appeal, a defendant must raise it or it is procedurally defaulted in a § 2255 motion.  United States v. Frady, 456 U.S. at 167-68; McNeal, 249 F.3d at 749.  When a § 2255 petitioner asserts a claim that is procedurally defaulted because it was not raised on direct appeal, the claim can only proceed after the petitioner has shown either:  (1) actual innocence or (2) that the procedural default should be excused because there was both cause for the default and actual prejudice to the petitioner.  Bousley, 523 U.S. at 621-22; McNeal, 249 F.3d at 749.

The mirror image of the procedural default rule is that if an issue *is* raised on direct appeal, it cannot be relitigated in a § 2255 motion.  Sun Bear, 644 F.3d at 702; Wiley, 245 F.3d at 752; McGee, 201 F.3d at 1023.  Issues may be relitigated in a § 2255 motion if the error constitutes "a fundamental defect which inherently results in a complete miscarriage of justice."  Davis, 417 U.S. at 346-47; Sun Bear, 644 F.3d at 704.  Or where the petitioner presents convincing new evidence of actual innocence.  Wiley, 245 F.3d at 752 (citing Weeks, 119 F.3d at 1350-51.  The harmonizing principle for both of these doctrines is that a § 2255 motion is not a substitute for an appeal; the appeal must do the proper work of an appeal.  All of Mr. Camberos-Villapuda's remaining claims are extinguished by these two doctrines.

Mr. Camberos-Villapuda argues in ground two of his § 2255 motion that the district court erred in denying his motion to suppress.  This issue was

appealed and decided by the Eighth Circuit.  See Camberos-Villapuda, 832
F.3d at 952.  Therefore, it cannot be relitigated on a § 2255 motion.
Mr. Camberos-Villapuda never asserts a fundamental defect or actual
innocence.

Mr. Camberos-Villapuda argues in ground three of his § 2255 motion
that the district court erred at sentencing by relying only on the facts recited in
the presentence investigation report.  This issue could have been raised in
Mr. Camberos-Villapuda's appeal, but it was not raised therein.  The issue is
therefore procedurally defaulted.  Even though the government explained the
law and facts in regard to this issue in its motion to dismiss, Mr. Camberos-
Villapuda never addressed the issue in his response in opposition to the
government's motion.  See Docket No. 14.  He did not, then, establish the
necessary cause and prejudice which would allow this court to address the
merits of this claim.  The court accordingly recommends dismissal of this
ground for relief.

Mr. Camberos-Villapuda argues in ground four of his § 2255 motion that
his life sentence violates the Eighth Amendment's prohibition on cruel and
unusual punishment.  This issue was raised on appeal and has already been
decided adversely by the Eighth Circuit.  See Camberos-Villapuda, 832 F.3d at
952-53.  Therefore, Mr. Camberos-Villapuda cannot relitigate the same issue in
his § 2255 motion.  Mr. Camberos-Villapuda never asserts a fundamental
defect or actual innocence.

Because grounds two, three and four in Mr. Camberos-Villapuda's
§ 2255 motion were either already litigated on appeal, or should have been and

22

were not, the court finds it cannot address the merits of those claims in the context of this action.  Therefore, the court recommends denying relief on these grounds.

**D.    No Evidentiary Hearing is Warranted**

"While '[a] petitioner is entitled to an evidentiary hearing on a section 2255 motion unless the motion and the files and the records of the case conclusively show that [he] is entitled to no relief,' no hearing is required 'where the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based.' " New v. United States, 652 F.3d 949, 954 (8th Cir. 2011) (quoting Anjulo-Lopez v. United States, 541 F.3d 814, 817 (8th Cir. 2008)).

"A district court may deny an evidentiary hearing where (1) accepting the petitioner's allegations as true, the petitioner is not entitled to relief, or (2) 'the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.' " Guzman-Ortiz v. United States, 849 F.3d 708, 715 (8th Cir. 2017) (quoting United States v. Sellner, 773 F.3d 927, 929-30 (8th Cir. 2014)).

Here, no evidentiary issue is warranted.  Mr. Camberos-Villapuda's claims all fail on the merits given the settled record before the court, or are procedurally inaccessible.  There are no issues of fact or credibility to be determined.  Accordingly, the court recommends no evidentiary hearing be held.

## CONCLUSION

Based on the foregoing law, facts and analysis, this magistrate judge respectfully recommends that the government's motion to dismiss [Docket No. 8] be granted and that all of Mr. Camberos-Villapuda's claims for relief be dismissed.

## NOTICE OF RIGHT TO APPEAL

The parties have fourteen (14) days after service of this report and recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained.  See FED. R. CIV. P. 72; 28 U.S.C. § 636(b)(1)(B).  Failure to file timely objections will result in the waiver of the right to appeal questions of fact.  Id.  Objections must be timely and specific in order to require *de novo* review by the district court.  Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990); Nash v. Black, 781 F.2d 665 (8th Cir. 1986).

DATED June 14, 2018.

BY THE COURT:

VERONICA L. DUFFY
United States Magistrate Judge